**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**RONNIE E. BROOKS,**

      **Plaintiff,**

**vs**                             **Case No: 06-15633**
                                    **Honorable Victoria A. Roberts**
**WARREN POLICE OFFICERS JONATHAN**
**PICKETT (Badge #10), SGT. HENDRICKSON,**
**DETECTIVE FONTAINE, OFFICER VAN HORN,**
**OFFICER O'KRAY, OFFICER LABAN,**
**OFFICER PETRUZINI, OFFICER DAVID CROW**
**(Badge #9), OFFICER MICHAEL KROLL,**
**(Badge #440), OFFICER MOTYKA, OFFICER SCOTT,**
**OFFICER GULA, OFFICER BALLINGER, and**
**DETECTIVE MANIERE,**

      **Defendants.**
_____/


## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION


**I.    INTRODUCTION**

      Before the Court is Defendants' Motion for Summary Judgment (Doc. 16). Oral

argument was heard on April 13, 2008. For the following reasons the Court **GRANTS it**

**in part and DENIES it in part**.

**II.    BACKGROUND**

      Plaintiff Ronnie Brooks' claims arise from alleged police misconduct between

April and May of 2006. The issues presented are whether: (1) Defendants had probable

cause to arrest Plaintiff; (2) Defendants are entitled to qualified governmental immunity;

(3) Plaintiff presents facts supporting the elements of a claim for malicious prosecution, false arrest and false imprisonment, assault and battery, ethnic intimidation, or trespassing under state law; and (4) Defendants are entitled to governmental immunity under state law.

The uncontested facts are as follows.  On April 7, 2006, Defendant Detective Maniere arranged for Defendant officer Jonathan Pickett ("Pickett") to purchase crack cocaine from a drug dealer known to the officers only as "D-bo."  As instructed, Pickett waited in his car at 10:45 p.m. in a Burger King parking lot in Warren, Michigan.  An African-American male arrived at 10:50 p.m. in a two-door black Plymouth Sundance.  The car had a paper license plate in the rear window.  D-bo pulled up alongside Pickett and told him to meet him in another parking lot.  At the new location, D-bo pulled next to Pickett.

Pickett got out of his car and purchased cocaine from the driver's side window of D-bo's car.  The entire transaction lasted 2-3 minutes.  D-bo wore a blue jacket over a hooded sweatshirt.  The parking lot was unlit and very dark.  After receipt of the cocaine, Pickett signaled to officers to conduct a traffic stop of the car.  However, D-bo was able to escape arrest by fleeing the scene at speeds above 100 miles per hour.  Police eventually ended their pursuit.

Facts are contested regarding the circumstances of a Law Enforcement Information Network ("LEIN") search by Defendants.  According to Defendants, two and a half weeks later, on April 25, 2006, at approximately 6:00 p.m., Pickett observed a black Plymouth Duster occupied by two African-American males in the 8 Mile/Van Dyke area.  The car matched D-bo's car only in color.  Unlike D-bo's car, it had a broken

taillight, three missing hubcaps, and a metal license plate. Pickett ran the car through the LEIN between April 26th and May 4th, when Plaintiff was arrested. The search revealed the car was registered to Lanet Brooks at 8085 Cadillac, Warren, Michigan. Pickett then ran a Secretary of State search for all licensed drivers at that address. The search listed Plaintiff. Pickett conducted a search of the Warren Police Department data base and found a three year old mug shot of Plaintiff and a record of a prior arrest. Pickett testified at his deposition that he believed the mug shot was of "D-bo" because the mug shot fit his memory of D-bo's description: "black male, short hair, not shaved bald but short hair . . . [not] overly heavy, but . . . [not thin]. . . . [A]verage. Mid 40's." Pickett Deposition at 13-14.

Eleven days later, on the afternoon of May 4, 2006, Pickett set up surveillance of 8085 Cadillac. After watching Plaintiff perform yard work Pickett called in Defendant uniformed officer Mark O'Kray ("O'Kray") and other officers. At approximately 6:00 p.m., O'Kray approached Plaintiff in his front yard with gun drawn and asked if he had seen anybody jump over his fence. Plaintiff responded "no." O'Kray asked him his name. Plaintiff identified himself. O'Kray promptly detained him in handcuffs without incident, and told him he was under arrest for an outstanding DUI warrant from the City of Detroit. Search incident to arrest revealed a small bag of marijuana on Plaintiff's person. Plaintiff protested that there was not a warrant for his arrest and that he found the bag on the sidewalk shortly before his arrest.

The remaining facts are stated by Plaintiff, and are not contested in Defendants' briefs. Plaintiff was placed in the squad car by O'Kray. O'Kray told Plaintiff he was really under arrest for a cocaine charge. Plaintiff responded that he did not sell cocaine.

At a stoplight, several undercover police looked at Plaintiff. According to Plaintiff, three or four of the officers got out of their cars and said something to the effect of "keep that fucking nigger and don't let him go nowhere." Plaintiff's Deposition at 34-37. Plaintiff maintains the officers repeated this phrase several times. *Id.* After arrival at the police station Plaintiff was placed in a cell. According to Plaintiff, after being processed an officer approached him and said something to the effect of "[D-bo] I told you I was going to get you, fucking nigger." Pl.'s Dep. at 38-39. Later that day, a different officer temporarily released Plaintiff from his cell and asked him to sign a confession. When Plaintiff refused, the officer said "if you don't sign this, you're going to see the roughest judge we got in the city, Judge Chabowski (phonetic)." *Id.* at 40. Plaintiff did not sign, and the officer returned him to his cell.

Plaintiff was arraigned on May 5, 2006. Detective Michael Kroll ("Kroll") testified that "[w]hen Mr. Brooks was taken into custody yesterday on the possession of marijuana [Pickett] identified [Plaintiff] as the person that sold him the cocaine and drove away at that time." Arraignment Transcript at 5. The court found probable cause for the marijuana possession charge and for delivery of less than 50 grams of cocaine.

Contrary to Kroll's sworn testimony, the record supports the conclusion that Pickett never approached and positively identified Plaintiff as "D-bo" at any point after his arrest and before arraignment. It appears the best look Pickett ever had of Plaintiff's face was not until a civil forfeiture proceeding after the initiation of this lawsuit. After two polygraph tests, the prosecuting attorney concluded Plaintiff was not "D-bo" and dismissed the cocaine drug charges. Plaintiff pled no contest to possession of marijuana. The judge deferred further proceedings and placed Plaintiff on probation.

4

The charge was later dismissed after Plaintiff complied with probation terms.

The thrust of the dispute regarding the LEIN search is whether and/or when Pickett accessed the LEIN system and identified Plaintiff's City of Detroit misdemeanor arrest warrant for driving under the influence. Plaintiff maintains the record shows officers first searched the LEIN system under Plaintiff's name and became aware of his outstanding warrant at 7:55 p.m on May 4, 2006, after Plaintiff was arrested. He relies on the time noted on the warrant printout attached as Plaintiff's Exhibit E. This proposition would casts doubt on Pickett's claim that he relied on this warrant to make a lawful initial arrest supported by probable cause. Defendants respond that Pickett said at his deposition that he did the LEIN check before the arrest and informed the arresting officers of the warrant.

Plaintiff's theory gains additional steam in light of the incident reports filed by Pickett and O'Kray. Pickett makes no mention of the outstanding Detroit warrant in his report. Defendants respond to this omission in their Reply, arguing: "Plaintiff asserts that, because [Pickett] did not note Plaintiff's outstanding arrest warrant in his report, Defendants did not check for Plaintiff's valid outstanding arrest warrant. This is speculation and not supported by any evidence on the record. Plaintiff fails to mention that the actual arresting officer, [O'Kray], did in fact note Plaintiff's warrant on his report." Defs.' Reply at 2. However, review of O'Kray's incident report reveals that he only wrote: "I . . . was dispatched to assist the WRPD Special Investigations Division with a *Felony* Warrant arrest. At 18:25 hrs I met with S.I.D. Sgt Hendrickson, who informed me that his unit was attempting to arrest . . . [Plaintiff] . . . for Cocaine Delivery and Flee & Elude . . . ." O'Kray Incident Report, May 4, 2006 (emphasis added).

Plaintiff's outstanding Detroit warrant was for a misdemeanor. The record shows a warrant issued for the felony cocaine charge after Plaintiff's arrest. Thus, nothing in O'Kray's report supports the proposition that he made the arrest pursuant to the outstanding City of Detroit warrant.

However, Plaintiff testified in his deposition that when O'Kray arrested him he told Plaintiff he was under arrest pursuant to a City of Detroit warrant for driving under the influence. Plaintiff's own deposition testimony and Reply contradict his argument that Defendants did not arrest him pursuant to the City of Detroit warrant. Further, Defendants' Reply includes the signed affidavit of Thomas L. Evans, Executive Secretary, CJIS Policy Council, stating that his review of the LEIN historical records shows Pickett ran an inquiry on Plaintiff that revealed his misdemeanor warrant on April 26, 2006, at 4:27 p.m., two and a half weeks before Plaintiff's arrest.

## III.   STANDARD OF REVIEW

This Court grants summary judgment to the moving Defendant "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995); FED. R. CIV. P. 56(C). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could

6

reasonably find for the plaintiff." *Id.* at 252.

## IV.  ANALYSIS

### A.  42 U.S.C. § 1983

Under 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  The reach of § 1983 is not without limit.  "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule "is intended to provide government officials with the ability ' . . . [to] [reasonably] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646 (1987).

The Court must apply a two-step process.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official *would understand that what he is doing violates that right*."  *Id.* at 202 (emphasis

7

added) (quoting *Creighton*, 483 U.S. at 639); *Wilson v. Layne*, 526 U.S. 603, 615 ("[T]he right allegedly violated must be defined at the appropriate level of specificity . . . ."). Analysis of the qualified immunity defense depends upon the objective reasonableness of the officers' conduct. *Ohio Civil Service Employees Asso. v. Seiter*, 858 F.2d 1171, 1173-1174 (6th Cir. 1988). In the Sixth Circuit, clearly established law should be apparent from the precedent of the Supreme Court, Sixth Circuit, relevant district court, or the highest court in the state in which the suit arose. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *see also Seiter*, 858 F.2d at 1175.

Plaintiff alleges violation of the Fourth Amendment of the U.S. Constitution, and correctly states Defendants carried out a discretionary function under color of state law when they arrested and detained him. *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). The first question is whether Defendants violated Plaintiff's Fourth Amendment rights.

Plaintiff argues he was arrested without probable cause. Under federal law, probable cause to arrest exists when the "'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] . . . that the suspect has committed, is committing, or is about to commit an offense.'" *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives in arresting the plaintiff are irrelevant. *Id.*; *see also Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002) (citing *People v. Champion*, 549 N.W.2d 849, 860 (Mich. 1996)) ("The probable cause determination is essentially the same under Michigan law . . . .").

Pickett and the arresting officers had probable cause to arrest Plaintiff after the LEIN system showed an outstanding warrant. *See United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006); *Taggart v. County of Macomb*, 587 F. Supp. 1080, 1081-1082 (E.D. Mich. 1982); *see also People v. Bell*, 253 N.W.2d 726, 729-730 (Mich. Ct. App. 1977). Plaintiff responds that the City of Detroit warrant had "cleared." He cites nothing to support this proposition. In contrast, Defendants submit a printout of the LEIN search following Plaintiff's arrest indicating an outstanding valid warrant, and an affidavit from the Criminal Justice Information Systems Policy showing the LEIN returned a valid warrant for Plaintiff on April 26, 2006. No evidence indicates the warrant was invalid on its face. *People v. Martin*, No. 241148, 2003 Mich. App. LEXIS 3086, at *3 (Mich. Ct. App. 2003) (unpublished). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, but Plaintiff failed to cite evidence to support his construction of the facts.

Even assuming *arguendo* that Pickett did not have probable cause to arrest Plaintiff in reliance on the LEIN system because he waited nine days between the LEIN search and his arrest of Plaintiff, or because the LEIN system "undu[ly] delay[s]" in its updating of information, Plaintiff's claims is still without merit. *Bell*, 253 N.W.2d at 730. Plaintiff offers no case law supporting a *clearly established right* to have officers verify the LEIN system even after waiting more than a week to arrest based on LEIN information. In fact, case law supports the opposite proposition. In *Martin*, the Michigan Court of Appeals sums up the current state of Michigan law on LEIN searches and probable cause to arrest:

> No authority imposes a blanket requirement that an officer wait for verification of LEIN information prior to making an arrest based on that information. No evidence showed that the warrant was defective on its face or that Carter had reason to know the warrant was no longer valid at the time he arrested defendant.

*Martin*, 2003 Mich. App. LEXIS 3086, at *3-4.

Plaintiff also cannot argue the initial LEIN search on his wife's car, or the subsequent use of this information, was a "search" under the Fourth Amendment. *See Ellison*, 462 F.3d at 563 ("So long as the officer had a right to be in a position to observe the defendant's license plate, any such observation *and corresponding use of the information* on the plate does not violate the Fourth Amendment.") (emphasis added). The information Pickett ultimately accessed about Plaintiff was his residence at the same address as the car's registration, information that is arguably not private, and was otherwise available to the police without a "search" under the Fourth Amendment. *See id.* at 562 ("The dissent fails to state how using a license plate number -- in which there is no expectation of privacy -- to retrieve other non-private information somehow creates a "search" for the purposes of the Fourth Amendment.").

Even if the Court ignored the clear language of *Ellison* that the *use* of information from a license plate does not itself constitute a "search," the right to be free of searches of the Secretary of State database, based on information first accessed through a LEIN search, is not "clearly established." Plaintiff cites no support for the proposition in his brief, and relied heavily in his oral argument on the dissent from *Ellison*. The Sixth Circuit first determined in a published opinion whether or not *a LEIN search* was a "search" under the Fourth Amendment in *Ellison* in 2006. "The contours of the right," if

it exists, to be free from a subsequent search based on information gained from a LEIN

search are not "sufficiently clear that a reasonable official *would understand that what*

*he is doing violates that right.*" *Katz*, 533 U.S. at 202 (emphasis added).

Given these precedents, and Plaintiff's own deposition testimony, the 42 U.S.C. §

1983 claim for violation of the Fourth Amendment is dismissed.

## B.  False Arrest and False Imprisonment

A false arrest is an illegal or unjustified arrest.  *Lewis v. Farmer Jack, Inc.,* 327

N.W.2d 893, 894 n.1-2. (Mich. 1982).  Ultimate guilt or innocence of the person arrested

is irrelevant.  *Id.*  In turn, "[f]alse imprisonment is the unlawful restraint on a person's

liberty or freedom of locomotion."  *Clarke v. K-Mart Corp.*, 495 N.W.2d 820, 823 (Mich.

Ct. App. 1993) (quoting *Stowers v. Wolodzko*, 191 N.W.2d 355 (1971)).  Under these

facts, Plaintiff's false arrest and false imprisonment are the same claim.  *See Peterson*

*Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 n.15 (Mich. Ct. App. 2003) ("A]

person who is falsely arrested is at the same time falsely imprisoned, and an unlawful

arrest may give rise to a cause of action for either false arrest or false imprisonment.");

*Parsons v. City of Pontiac*, No. 04-74457, 2007 U.S. Dist. LEXIS 72528, at *18 n.2 (E.D.

Mich. Sept. 28, 2007).  In summary, a false arrest is:

> *[M]ade without legal authority*.  One who instigates or participates in a lawful
> arrest, as for example an arrest made under a properly issued warrant by
> an officer charged with the duty of enforcing it, . . . is not liable for false
> imprisonment, since no false imprisonment has occurred.

*Novelties*, 672 N.W.2d at 362 (citations and quotations omitted) (emphasis in

original) (quoting *Farmer Jack*, 327 N.W.2d at 894).

Under Michigan's governmental immunity, "a police officer, acting in good faith

with probable cause within the scope of his authority, is not liable for false arrest or false imprisonment even though the arrest is subsequently found to be baseless." *Blackman v. Cooper*, 280 N.W.2d 620, 622 (Mich. Ct. App. 1979).

Plaintiff's claim for false arrest and imprisonment fails. Defendants arrested him on a facially valid warrant from the City of Detroit. *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 452 (6th Cir. 2007) (citing *Farmer Jack*, 327 N.W.2d at 901).

## C. Malicious Prosecution

In an action for malicious prosecution, the plaintiff has the burden of proving:

(1) the defendant initiated a criminal prosecution against him;

(2) the criminal proceedings terminated in his favor;

(3) the . . . person who instituted or maintained the prosecution lacked probable cause for his action; and

(4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Matthews v. Blue Cross & Blue Shield of Michigan*, 572 N.W.2d 603, 609-610 (Mich. 1998).

A malicious prosecution claim is distinct from false arrest and imprisonment:

[The] distinction between them is fundamental, the essential difference being the validity of the legal authority for the restraint imposed. In malicious prosecution the detention is malicious but under due form of law, whereas in false imprisonment the converse is true. The detention is unlawful, but malice and lack of probable cause are not essential, as a general rule, to the cause of action. Thus, where the process on which an arrest is made is regular and legal in form and issued by a court of competent authority, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution. *But a suit for false arrest or imprisonment is the proper action where the aggrieved party is arrested without legal authority*, as where he is arrested pursuant to process that is void. In the case of malicious

prosecution, the valid process justifies the restraint or imprisonment, and the gist of the cause of action is malice or evil intent.

*Farmer Jack*, 327 N.W.2d at 901 (emphasis in original).

It was once held that "'the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause.'" *King v. Arbic*, 406 N.W.2d 852, 858 (Mich. Ct. App. 1987) (quoting *Belt v. Ritter*, 171 N.W.2d 581, 586 (Mich. Ct. App. 1969)). Now, "[t]he question is this: Is there any evidence in the record, as it exists, which would give rise to the inference that [the officer] knowingly included false facts in his incident report, without which the prosecutor could not have concluded there was probable cause?" *Blue Cross*, 572 N.W.2d at 615 (quoting *King*, 406 N.W.2d at 858); *see also King*, 406 N.W.2d at 859 ("The question simply put is, did [the officer] fill out a fair incident report?"). However, if the prosecutor conducted and relied on an independent investigation to charge, the officer cannot be liable for a claim of malicious prosecution. *See Lebowski v. City of Southfield*, No. 04-7667, 2006 U.S. Dist. LEXIS 32907, at *22 (E.D. Mich. May 24, 2006).

As to the first element, the Plaintiff must prove "[a] defendant intentionally lied in his incident report in order to procure a criminal proceeding against [Plaintiff] which [the] defendant knew was not supported by probable cause." *Metiva*, 31 F.3d at 388; *King*, 406 N.W.2d at 858 (quoting *Wilson v. Yono*, 237 N.W.2.d 494 (Mich. Ct. App. 1975)) ("[A]lthough the cases seem to talk in terms of probable cause, it is clear that the rule is based upon the idea that defendant has not in fact *instituted* the prosecution.")

(emphasis in original).

Often, in examining the incident report, the Court must determine whether any omissions from the incident report are "exculpatory" or merely "ameliorating circumstances." *Blue Cross*, 572 N.W.2d at 615. Omission of merely "ameliorating circumstances" from an incident report cannot create liability. However, the Court need not delve deeply into the distinction. The issue is not as much whether Pickett *omitted* facts from his report, but more so whether it is true or not that he knowingly and truthfully stated that he "immediately" recognized D-bo as Plaintiff from the mug shot. Nonetheless, Defendant may reasonably argue Pickett's failure to describe some reasonable doubt regarding his identification of Plaintiff as D-bo was merely the omission of "ameliorating circumstances:"

> It has never been pled or argued by plaintiff that defendant did anything worse than fail to include certain arguably exculpatory items. In fact, those items which plaintiff has consistently labeled as "exculpatory" (*i.e. that it was dark, that the victim only saw part of his assailant's legs, etc.*), are not really exculpatory in nature. An exculpatory fact would be something such as an eye witness who saw plaintiff elsewhere or the fact that plaintiff had a broken ankle on the night in question. While the distinction is concededly a fine one, plaintiff is really arguing certain ameliorating circumstances, not exculpatory facts. This court has determined that it would place too much of a burden upon investigating police officers to require that they include all possibly mitigating items in their police reports in order to avoid potential liability.

*Blue Cross,* 456 Mich. at 390 (internal citations omitted) (emphasis added).

However, application of this language from *Blue Cross* to Pickett's statement in his police report is misplaced. Unlike the hypothetical stated in *Blue Cross*, the inclusion or exclusion of Pickett's statement is determinative of the existence of probable cause. The issue is not whether it was dark in the parking lot where Pickett

saw D-bo, so much as whether it is in fact true, as he states in his report, that Pickett immediately recognized Plaintiff as D-bo. In other words, assuming *arguendo* Pickett's statement in his report was untrue, the dispositive question is whether absent Pickett's statement that he "immediately recognized" Plaintiff, would there have been probable cause to prosecute? *Metiva*, 31 F.3d at 388; *Blue Cross*, 572 N.W.2d at 615; *see also Rivers v. Ex-Cell-O Corp.*, 300 N.W.2d 420, 424 (Mich. Ct. App. 1980).

The Court cannot hold as a matter of law that Pickett knowingly and truthfully stated that Plaintiff was D-bo at the time he made his May 4, 2006 incident report. More importantly, the Court cannot hold as a matter of law that Pickett believed it was true, as he wrote in his report, that "he immediately recognized [Plaintiff's] face as the [person] who had sold [him] crack" when he initially reviewed Plaintiff's mugshot. Pickett May 4, 2006 Incident Report. The entire basis for Pickett's identification and probable cause to charge for the cocaine offense was Pickett's "immediate" recognition of Plaintiff as "D-bo" from almost three weeks prior, by way of a three year old mug shot, when his only previous contact with D-bo was in an unlit parking lot while D-bo's face was partially obscured. *See Lebowski*, 2006 U.S. Dist. LEXIS 32907, at *22 ("[D]efendants broadly assert that there is no evidence that the officers knowingly made false statements in these reports. Yet, a reasonable trier of fact certainly could conclude otherwise . . . ."). Because the issue is the veracity of Pickett's statement of his "immediate recognition" of Plaintiff from the mug shot, viewing the evidence in the light most favorable to Plaintiff transforms the issues into a contested material fact.

In addition, it appears Pickett never positively identified Plaintiff as D-bo from close range after Plaintiff's arrest and before he wrote his report, and he did not identify

him before Plaintiff's arraignment. This supports an inference that Pickett knew his statement that Plaintiff was D-bo was untrue. Indeed, viewing the record in the light most favorable to Plaintiff, it appears that Pickett never got close enough to Plaintiff's face to positively identify him until a forfeiture hearing after Plaintiff filed suit. On the other hand, Pickett's April 10 and O'Kray's May 4, 2006 incident reports do not support the inference that the officers *knowingly* submitted false information, without which there would not have been probable cause to charge Plaintiff with the cocaine offense.

As to the second element, the cocaine charge terminated in Plaintiff's favor. Defendants maintain that because Plaintiff pled no contest to the marijuana charge under M.C.L. § 333.7411, the proceedings did not terminate in his favor. Plaintiff responds that the charges were never adjudicated, and were dismissed after he complied with the terms of probation.

In deciding the issue the Court notes that termination that suggests guilt, or that is the result of an agreement with the prosecutor, does not support a finding that the proceedings terminated in a defendant's favor. *See Cox v. Williams*, 593 N.W.2d 173, 175 (Mich. Ct. App. 1999) ("Generally, courts have held that where termination results from a compromise or settlement or is brought about by an action of the accused as a courtesy or favor or by some act of the accused that prevents the litigation, there is no favorable termination that will serve as a basis for a cause of action for malicious prosecution."); *Novelties,* 672 N.W.2d at 364. Although the precise circumstances of the marijuana charge are not clear from the record, at least one court decision supports the proposition that a no contest plea under M.C.L. § 333.7411 is a favorable termination of the proceedings. *See Jansma v. Ostopowitz*, No. 05-489, 2007 U.S. Dist.

16

LEXIS 27508, at *15 n.7 (E.D. Mich. Apr. 13, 2007).

But, the Court need not decide this issue. It is the proceedings related to the cocaine charge that the Court examines, and it is on this charge, that Pickett may have knowingly submitted untruthful information to establish probable cause. *See Mitchell v. City of Ypsilanti*, No. 06-11547, 2007 U.S. Dist. LEXIS 56575, at *21-22 (E.D. Mich. Aug. 3, 2007)*; see also Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (applying New York law).

In *Janetka,* the Second Circuit held that distinguishing between the termination of proceedings on separate counts is especially appropriate when the dismissed charge is a more serious offense. *See Janetka*, 892 F.2d at 190 ("To hold that an acquittal does not constitute a favorable termination would be particularly inappropriate in this case, where the charge for which [defendant] was acquitted was more serious than the one for which he was convicted.").

Although the point is arguable, the Court agrees with *Mitchell* and the reasoning of *Janetka*, and holds that Plaintiff satisfies the second element.

The third element is essentially the same as the first. *See Baker v. Barach*, 297 N.W. 472, 473-474 (Mich. 1941); *Thomas v. Bush*, 166 N.W. 894, 895 (Mich. 1918); *Stobbe v. Parrinello,* No. 201237, 1998 Mich. App. LEXIS 825, at *4 (Mich. Ct. App. Nov. 24, 1998) (unpublished). The Court must not just examine probable cause to arrest or charge Plaintiff in general, but also, whether there was probable cause to arrest and charge him on the cocaine charge without Pickett's potentially false statements, and whether Pickett knew it was false at the time he put it in his report. *See Wilson v. City of Livermore,* 1 Fed. Appx. 334, 336-338 (6th Cir. 2001) (unpublished);

*Hinchman*, 312 F.3d at 204; *Josey v. Salisbury*, No. 92-2093, 1993 U.S. App. LEXIS 30046, at *6 (6th Cir. Nov. 18, 1993) (unpublished); *Nawrocki v. Eberhard Foods, Inc.*, 180 N.W.2d 849, 851 (Mich. Ct. App. 1970); *see also Glinski v. Wolf*, No. 201478, 1999 Mich. App. LEXIS 1775, 13-14 (Mich. Ct. App. Jan. 5, 1999) (unpublished)*; Stobbe*, 1998 Mich. App. LEXIS 825, at *4.

Reading Pickett's deposition testimony (*supra* at 3) (the only evidence available on Pickett's state of mind and "immediate" recognition of Plaintiff as D-bo) in the light most favorable to Plaintiff, the Court holds that Pickett's "immediate" recognition of Plaintiff is a contested material fact for the jury.

In addition, a finding of probable cause by a state court does not bar a malicious prosecution claim based on alleged false statements made at the preliminary hearing, and presumptively at an arraignment, as Defendants suggest. *Hinchman*, 312 F.3d at 202-204; *Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001); *Salisbury*, 1993 U.S. App. LEXIS 30046, at *6; *Buttino v. City of Hamtramck*, 87 Fed. Appx. 499, 504 (6th Cir. 2004) (unpublished).  It is not clear whether Kroll intentionally misstated that Pickett identified Plaintiff after his arrest later that day, but the statement appears from the record to be untrue.  This Court may determine whether there was probable cause on the cocaine charge.  Moreover, whether there was probable cause based on the facts stated by Kroll to the magistrate, is a different issue than whether *Pickett* knowingly submitted false statements in his report.

Even though Defendants had probable cause to arrest Plaintiff on his outstanding City of Detroit warrant, because the Court cannot hold as a matter of law that there was probable cause to arrest or charge Plaintiff with the cocaine offense, the Court may infer

malice.  *See Metiva*, 31 F.3d at 389 ("[T]here is evidence in the record . . . , which gives rise to the possible inference that defendant . . . knowingly included false facts in his incident report without which the prosecutor could not have concluded there was probable cause for prosecution.  The allegation that defendant acted with malice may be inferred from lack of probable cause."); *Strutz v. Oakland County*, 308 F. Supp. 2d 767, 787 (E.D. Mich. 2004); *Blue Cross*, 572 N.W.2d at 610 nn.14-15; *Flones v. Dalman*, 502 N.W.2d 725, 730 (Mich. Ct. App. 1993).

Malicious prosecution is an unjustified and intentional tort, not covered by governmental immunity under Michigan law.  *See Ypsilanti*, 2007 U.S. Dist. LEXIS 56575, at *22; *Van Pelt v. Cordes*, No. 04-47, 2005 U.S. Dist. LEXIS 16403, at *31 (W.D. Mich. Apr. 28, 2005); *Brewer v. Perrin*, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984) ("Governmental actions which would normally constitute intentional torts are protected by governmental immunity *if those actions are justified*.") (emphasis added); *see also Moore v. City of Portage*, No. 01-115, 2002 U.S. Dist. LEXIS 14647, at *47 (W.D. Mich. Aug. 8, 2002) ("It is the opinion of the Court that, making false statements to create probable cause constitutes conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. . . .  [G]overnmental immunity does not protect Defendants from this malicious prosecution claim.").

Plaintiff's claim for malicious prosecution against Pickett will continue to trial.  The Court notes Plaintiff's argument on this claim is argued only generally in his Response.  The Court was significantly unaided in its effort to determine the merits of this claim.  Furthermore, since Plaintiff's claim is not substantively argued with respect to Kroll, it is

dismissed.

**D.      Assault and Battery**

Under Michigan law, an assault is "'any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact.'"  *Smith v. Stolberg*, 586 N.W.2d 103, 105 (Mich. Ct. App. 1998) (quoting *Espinoza v. Thomas*, 472 N.W.2d 16 (Mich. Ct. App. 1991)).  A battery is "the wilful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Id.*

Assault and battery are intentional torts.  *Id.*  "Generally, police officers are not protected from liability for their intentional torts, but where the acts alleged to be intentional torts are 'justified,' i.e., objectively reasonable under the circumstances, the officer will be shielded by governmental immunity."  *Odom v. Wayne County*, No. 2070501, 2007 Mich. App. LEXIS 191, at *4-5 (Mich. Ct. App. Feb. 1, 2007) (unpublished); *Brewer*, 349 N.W.2d at 202 ("[G]overnmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified.").

In Michigan, it is well settled that:

> [A] police officer may use reasonable force when making an arrest. The force reasonably necessary to make an arrest is the measure of necessary force that an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary.

*VanVorous v. Burmeister*, 687 N.W.2d 132, 141 (Mich. Ct. App. 2004) (internal citations and quotations omitted).

Plaintiff states in his Reply that "[he] was handcuffed without incident and placed in the squad car." Pl.'s Reply at 2-3. This amount of force is reasonable. Plaintiff's claim for assault and battery is without merit.

**E.    Trespass**

Under Michigan law, trespass is the unauthorized intrusion or invasion of the private premises or lands of another. *Fruman v. City of Detroit*, 1 F. Supp. 2d 665, 675 (E.D. Mich. 1998). "[A] public officer who is on the premises of another pursuant to legal authorization is not liable for trespass. Such officer becomes liable, however, where he acts in excess of his authorization." *Antkiewicz v. Motorists Mut. Ins. Co.*, 283 N.W.2d 749, 753 (Mich. Ct. App. 1979) *vacated in part on other grounds*, 285 N.W.2d 659 (Mich. 1979). Defendants arrested Plaintiff pursuant to a facially valid warrant, and were only briefly on his property pursuant to this legal authorization. Plaintiff's claim for trespass is without merit.

**F.    Ethnic Intimidation**

The elements of an ethnic intimidation claim under Michigan law are:

A . . . person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:

(a) Causes physical contact with another person.

21

(b) Damages, destroys, or defaces any real or personal property of another person.

(c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.

. . . .

(3) Regardless of the existence or outcome of any criminal prosecution, a person who suffers injury to his or her person or damage to his or her property as a result of ethnic intimidation may bring a civil cause of action .

. . .

M.C.L. § 750.147b.

Plaintiff must prove Defendants "[threatene[d], by word or act," to "[c]ause physical contact with [Plaintiff]," and that "there [was] reasonable cause to believe that" physical contact or property damage would occur. *Id.* In addition, the action must be taken "with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin." *Id.* The statute contains "no limiting language to suggest that ethnic intimidation may only be charged when the specific intent to intimidate or harass is [the] only reason for the underlying predicate criminal act." *People v. Schutter*, 695 N.W.2d 360, 362 (Mich. Ct. App. 2005). Instead, the statute only requires some word or act "committed maliciously and accompanied by a specific intent to intimidate or harass because of race, color, religion, gender, or national origin." *Id.* at 364. The statute supports liability even when the assailant forms intent to intimidate or harass because of race during the commission of the predicate act. *Id.*

Defendants' use of "racial epithets . . . give[s] rise to a reasonable inference that

[they] specifically intended to" take the actions they did "because of [Plaintiff's] race."
*Id.* The remaining issue is whether any of the Defendants, "threaten[ed], by word or act," to "[c]ause[] physical contact with [Plaintiff]." M.C.L. § 750.147b.

Plaintiff asserts he "can present evidence that Defendants engaged in conduct that falls under [the statute] by presenting evidence that Defendant stood very closed [sic] to Plaintiff and was yelling in a manner that could be interpreted as threatening." Pl.'s Reply at 14. But, Plaintiff's brief cites no evidence to support this construction of the facts.

Plaintiff also cites an unpublished decision of the Michigan Court of Appeals, which holds that "[t]he statute requires only an intent to *intimidate or harass* by threatening physical contact or property damage, not an actual intent to *harm* the victims through physical contact or property damage." *People v. Pricket,* No. 95-003083 (Mich. Ct. App. Nov. 26, 1996) (unpublished) (emphasis in original). Plaintiff apparently argues that this construction more readily supports his claim. However, even this case found that although the statute does not define a "credible threat[,]. . . . the statutorily proscribed conduct appears to be similar to the prohibition against simple assault." *Id.* It is certainly true that in some contexts the combination of racially charged words or symbols, with or without accompanying acts, may be so powerful, intimidating, or violent, as to allow a person (especially a detained person) to have reasonable cause to believe physical contact will occur. *See e.g. Virginia v. Black*, 538 U.S. 343, 357 (2003) ("While cross burning does not inevitably convey a message of intimidation, often the cross burner intends that the recipients of the message fear for their lives. And when a

cross burning is used to intimidate, few if any messages are more powerful."). However, this is not such a case.

At his deposition, Plaintiff does not mention fear of physical contact or assault. The racial slurs uttered by the officers, while offensive, did not communicate an intention to cause physical contact with Plaintiff or his property. While Plaintiff sat handcuffed in the patrol car, the officers communicated that they wished to keep Plaintiff detained where he was, not that they wished to strike him. Plaintiff also offers no evidence that the officers could have readily reached him inside the car in order to land a blow. Similarly, based on Plaintiff's deposition testimony, at the police station none of the officers acted towards him in a manner approaching the level of an assault. When the officer at the police station addressed him as D-bo and hurled racial slurs at him, Plaintiff was locked in a cell. Indeed, Plaintiff responded to the racial slurs from the officer by saying "stick your head in here so I can kick it off because you're lying . . . .," evidencing an inability for Plaintiff or the officer to readily make physical contact with each other between the bars. Pl.'s Dep. at 39.

While M.C.L. § 750.147b does not require accompanying acts, and can be based on words alone, a reasonable jury could not find Defendants' words communicated a threat to cause physical contact with Plaintiff or his property. The yelling and use of racial slurs, even in these two contexts, is simply not enough to support something akin to an assault. Notably, the constitutionality of M.C.L. § 750.147 relies, in part, on the existence of an underlying predicate criminal offense. *See People v. Richards*, 509 N.W.2d 528, 529 (Mich. Ct. App. 1993) ("The statute is satisfied only when there is

evidence of an underlying predicate criminal act committed because of racial animosity. These elements are very clear and definite.").

This claim is foreclosed.

## V.    CONCLUSION

Pursuant to a Stipulated Order, the Court dismissed all charges against Mark Fontaine, Dale Van Horn, David Crown, Joseph Gula, Jeffrey Motyka, Thomas Petruzini, Robert Scott, Timothy Maniere, and Officer Ballinger without prejudice.  Now, the Court **GRANTS** Defendants' motion on Plaintiff's claim for violation of the Fourth Amendment under 42 U.S.C. § 1983, as well as Plaintiff's claims under state law for assault and battery, trespassing, false arrest and imprisonment, and ethnic intimidation. The Court **DENIES** Defendants' motion on Plaintiff's claim for malicious prosecution against Pickett, and **GRANTS** the motion against all other Defendants.

The malicious prosecution claim against Pickett will proceed to trial on April 29, 2008.  The Court retains jurisdiction under 28 U.S.C. § 1367(a), (c).

**IT IS ORDERED**.

         /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 7, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 7, 2008.

s/Linda Vertriest

Deputy Clerk